IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CHRISTOPHER CORONEOS | : | |
| | : | |
| v. | : | Civil Action No. DKC 19-3579 |
| | : | |
| KENNETH E. LABOWITZ, in his capacity as Trustee under the Last Will and Testament of Marie S. Argyropoulos dated March 7, 2006 | : | |
| | : | |
| | : | |

### MEMORANDUM OPINION

Presently pending and ready for resolution in this diversity breach of trust case are the Motion to Dismiss filed by Defendant Kenneth E. Labowitz, (ECF No. 14), and the Motion for Summary Judgment filed by Plaintiff Christopher Coroneos, (ECF No. 16).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

## I.   Background

On March 7, 2006, Marie Argyropolous executed her Last Will and Testament (the "Will").  She was domiciled in the District of Columbia when she executed her will but lived in Maryland at the time of her death in March 2011, and her will was probated in the Circuit Court for Montgomery County, Maryland.  In the

will, she created a series of trusts with her grandchildren –
Paul Coroneos, Christopher Coroneos ("Coroneos" or "Plaintiff"),
Maria Coroneos, and Philip Coroneos (collectively, the "Coroneos
siblings") – as beneficiaries, and Angelo Tompros as trustee.
In 2014, Mr. Tompros reached out to Mr. Labowitz about the
possibility of Mr. Labowitz replacing him as trustee, pursuant
to the Will, which afforded Mr. Tompros the power and discretion
to choose his successor.  Mr. Tompros subsequently decided to
resign, and Mr. Labowitz agreed to step in as trustee.

On December 4, 2014, Mr. Tompros wrote a letter to the
Coroneos siblings notifying them of his intent to substitute Mr.
Labowitz for himself.  By that point, the relationship between
trustee and beneficiaries had deteriorated.  Mr. Tompros
understood that the Coroneos siblings objected to his service as
trustee and would continue to object to Mr. Labowitz's serving
as trustee.  Mr. Tompros actively sought the Coroneos siblings'
approval of the trustee substitution – even though he had no
obligation to do so – on the understanding that the Coroneos
siblings were likely to object.  The letter essentially served
as a warning to the Coroneos siblings that if they did not
formally agree to Mr. Labowitz's appointment as trustee, Mr.
Tompros would seek a declaratory judgment approving the validity
of the appointment.

Due to the Coroneos siblings' collective refusal to acknowledge the validity of Mr. Labowitz's appointment, Mr. Tompros followed up on his promise by filing a complaint in the Circuit Court for Montgomery County, Maryland (the "Circuit Court") on January 5, 2015. The Coroneos siblings counterclaimed and the Circuit Court ultimately ruled for Mr. Tompros on all counts of both the initial claim and counterclaim.

The Circuit Court issued a declaratory judgment on July 9, 2015, (1) approving Mr. Tompros' resignation and Mr. Labowitz's appointment as trustee; (2) declaring that Mr. Tompros should be reimbursed for his expenses in bringing the declaratory judgment action; and (3) denying the declarations the Coroneos siblings sought in their counterclaim. On August 5, the Coroneos siblings simultaneously appealed and sought reconsideration of the declaratory judgment. While that appeal was pending, on August 15, 2015, Mr. Tompros officially resigned and appointed Mr. Labowitz as his successor. Twelve days later, Mr. Labowitz filed a Notice of Substitution of Party with the Circuit Court, replacing Mr. Tompros as Plaintiff in the Circuit Court action while the appeal and motion for reconsideration were pending.

On September 2, 2015, the Court of Special Appeals of Maryland ordered the parties to participate in mediation. Mr. Labowitz and the Coroneos siblings engaged in mediation and, on

February 19, 2016, following a successful mediation, signed and agreed to a consent order with the Circuit Court (1) approving Mr. Tompros' resignation and Mr. Labowtiz's appointment as trustee, (2) ordering that the trusts not be reimbursed for Mr. Tompros' and Mr. Labowitz's attorney's fees and costs accrued in the declaratory judgment action; (3) mooting the motion for reconsideration; and (4) closing the Circuit Court action.

For the next three years, Mr. Labowitz managed the trust from his home in Alexandria, Virginia.  Under the terms of the Will and trust, Mr. Labowitz was obligated to "distribute, outright and free of trust, one third (1/3) of the then-remaining principal and undistributed income, if any, of such trust to such beneficiary" when each beneficiary turned 40.  On August 8, 2019, Christopher Coroneos turned 40.  On September 25, 2019, Plaintiff demanded his one-third of the trust principal from Mr. Labowitz.  Mr. Labowitz refused on the ground that he had elected to disburse the one-third payment to Mr. Coroneos early, having advanced $500,000, earmarked as "PER TRUSTEE INSTRUCTIONS TO DISTRIBUTE 1/3 OF TRUST CORPUS PER AGE ATTAINMENT," on March 9, 2018.

On October 14, 2019, Mr. Coroneos filed a complaint in the Circuit Court, seeking (1) a declaration that Mr. Labowitz had violated the trust provisions and his fiduciary duties as trustee; (2) an accounting of the trust; (3) his third of the

4

trust principal; (4) for the court to take over administration of the trust; (5) Mr. Labowitz's removal as trustee – based entirely on his failure to disburse the principal to Mr. Coroneos on his 40th birthday; (6) disgorgement of any compensation Mr. Labowitz received from the trust after August 8, 2019; and (7) attorney's fees and costs.   Mr. Labowitz removed the case from the Circuit Court to this court, (ECF No. 1), and, on January 15, 2020, moved to dismiss for lack of personal jurisdiction, (ECF No. 14).   On February 5, Mr. Coroneos filed his response in opposition to the motion to dismiss, as well as a cross-motion for summary judgment. (ECF No. 16).   Mr. Labowitz replied to the response, (ECF No. 17), and himself responded in opposition to Mr. Coroneos' motion for summary judgment, (ECF No. 18).   The court subsequently directed Mr. Labowitz to refile the reply and opposition together as a consolidated reply and opposition, (ECF No. 19), and he did so on February 27, (ECF No. 20).   Mr. Coroneos then replied to Mr. Labowitz's opposition to the motion for summary judgment on March 19.   (ECF No. 21).

## II.  Analysis

### A.   Personal Jurisdiction

When a court's power to exercise personal jurisdiction is challenged by a motion under Rule 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the

plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir.2003) (citation omitted). If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst,* 334 F.3d at 396. In determining whether the plaintiff has met its burden, all jurisdictional allegations must be construed in the light most favorable to the plaintiff, and the most favorable inferences must be drawn for the existence of jurisdiction. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir. 2005) (internal quotation marks omitted).

"The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction." *Johansson Corp. v. Bowness Constr. Co.,* 304 F.Supp.2d 701, 703 (D.Md. 2004). Specific personal jurisdiction applies where a controversy is "related to or 'arises out of' a defendant's contacts with the

forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984) (*quoting Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)).   General jurisdiction, by contrast, may be exercised where a defendant maintains "continuous and systematic" contact with the forum state.   *Helicopteros,* 466 U.S. at 415 (*quoting Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 438 (1952)).

### 1.   Specific Jurisdiction

Where the defendant is a nonresident, a federal district court may exercise specific personal jurisdiction only if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir.1993).   The Maryland Long-Arm Statute, Md.Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment.   *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 710 (4th Cir. 2002) (*citing Androutsos v. Fairfax Hosp.,* 323 Md. 634, 637, 594 A.2d 574 (1991)).   This broad reach does not suggest that analysis under the long-arm statute is irrelevant; rather, it reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process

clause." *Dring v. Sullivan,* 423 F.Supp.2d 540, 545 (D.Md. 2006) (*quoting Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals,* 887 F.Supp. 116, 118-19 n.2 (D.Md. 1995)); *see also Mackey v. Compass Mktg., Inc.,* 391 Md. 117, 141 n.6, 892 A.2d 479 (2006) (although the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to dispense with analysis under the long-arm statute"). To satisfy the long-arm prong of the analysis, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in opposition to a Rule 12(b)(2) motion. *See Ottenheimer Publishers, Inc. v. Playmore, Inc.,* 158 F.Supp.2d 649, 652 (D.Md.2001); *Johansson,* 304 F.Supp.2d at 704 n. 1.

The Maryland Long-Arm Statute provides, in relevant part:

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

> (1) Transacts any business or performs any character of work or service in the State;

> (2) Contracts to supply goods, food, services, or manufactured products in the State;

> (3) Causes tortious injury in the State by an act or omission in the state;

8

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md.Code Ann., Cts. & Jud. Proc. § 6-103.

Plaintiff relies on subsection (b)(1). The relevant activities Mr. Coroneos relies on to establish that Mr. Labowitz "transacted business" within Maryland include: (1) the fact that the Will was probated in Maryland; (2) Mr. Labowitz's willing decision to become trustee; (3) Mr. Labowtiz's substituting himself in the Circuit Court action; (4) Mr. Labowitz's participation in mediation in Maryland; and (5) Mr. Labowitz's communications with Mr. Tompros prior to his service as trustee. (ECF No. 16, at 8-9). Plaintiff sums up the consequences of these acts of Mr. Labowitz as follows:

> Mr. Labowitz received the benefit of Maryland Courts by not having to pay attorneys' fees in that Action, which ultimately were taken from the Trust.

> Following the Maryland Court's judicial
> approval of Mr. Labowitz's appointment, he
> has continued to administer the Trust,
> benefiting from commissions and
> compensation. Without a Maryland Court's
> judicial approval, Mr. Labowitz would not
> have been Trustee. Mr. Labowitz expressly
> availed himself of the Maryland Courts and
> Maryland Laws which allowed [*sic*] to be the
> Trustee.

(*Id.*).

The Maryland Court of Appeals has held that "the acts done within a State which will support in personam jurisdiction as transacting 'any business' are not necessarily limited to acts which are a part of commerce or of transactions for profit, but include acts which constitute a purposeful activity within the State." *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350, 231 A.2d 22, 26 (1967). Such purposeful activity includes initiating or participating in litigation. *See St. Paul Mercury Ins. Co. v. Am. Bank Holdings, Inc.*, 691 F. Supp. 2d 626, 630 (D.Md. 2010) ("civil actions voluntarily initiated by nonresidents may constitute purposeful availment of the laws and protections of Maryland") (citing *Neuralstem, Inc. v. StemCells, Inc.*, 573 F.Supp.2d 888, 898 (D.Md. 2008)).

While initiation of or involvement in prior civil actions in Maryland may constitute "transacting business" within Maryland, there remains the requirement that "[i]f jurisdiction over a person is based solely upon this section, he may be sued

only on a cause of action *arising from* any act enumerated in this section." Md.Code Ann., Cts. & Jud. Proc. § 6-103(a) (emphasis added). The questions, then, are (1) whether Mr. Labowitz's involvement in prior litigation qualifies as "transacting business" within Maryland, and (2) whether the current action "arises from" Mr. Labowitz's prior availment of the Maryland courts. The court finds that the answer to both questions is no.

First, most of the conduct Plaintiff points to does not qualify as "transacting business" within Maryland. While Mr. Labowitz agreed to serve as trustee willingly, that decision was by no means a decision to "transact business" in Maryland: Mr. Tompros initiated contact with Mr. Labowitz, Mr. Labowitz was to administer the trust from his home in Virginia, the trust was not then under the supervision of any court, in Maryland or otherwise, and Mr. Labowitz's duties as trustee seem to primarily involve occasional disbursements to the Coroneos siblings, none of whom reside in Maryland. In other words, Mr. Labowtiz's agreement to serve and duties as trustee simply did not involve transacting any business in Maryland.

Further, Mr. Labowitz himself did not initiate the Circuit Court action; Mr. Tompros did. Mr. Labowitz was substituted in as plaintiff only *after* the Circuit Court had declared his right to serve as Mr. Tompros' successor trustee, and *after* Mr.

Tompros had appointed him as trustee.   In other words, Mr. Labowitz was already the trustee before he ever became a party to an action in a Maryland court.   Plaintiff's claim that "[w]ithout a Maryland Court's judicial approval, Mr. Labowitz would not have been Trustee," (ECF No. 16, at 9), elides the actual issue because the Circuit Court's judicial approval was by no means a result of Mr. Coroneos' availment of the Maryland courts.   It is also, by the terms of the trust as interpreted by the Circuit Court, wrong:   Mr. Tompros had the absolute right to appoint Mr. Labowitz as successor trustee, and was not technically required to seek judicial approval, but rather did so because of the Coroneos siblings' objections.   In sum, Mr. Labowitz did not need to transact any business at all in Maryland in order to become trustee.

Second, the current action does not "arise from" any business Mr. Labowitz transacted in Maryland.   While the Court of Special Appeals ultimately issued a consent order regarding Mr. Labowitz's right to serve as trustee while Mr. Labowitz was a party to an action in a Maryland court, that order merely affirmed the declaratory judgment Mr. Tompros had sought and received prior to Mr. Labowitz's involvement in any judicial proceeding.   While it is possible – even likely – that under Maryland law, Mr. Labowitz's involvement in mediation in Maryland *could* qualify as "transacting business," it is clear

that the instant case in no way arises from Mr. Labowitz's involvement in said mediation.  In *Neural Stem, Inc.*, this court explained the circumstances whereby one litigation "arises from" initiation of or participation in prior litigation such that the initiator or participant is subject to personal jurisdiction in Maryland on a later claim:

> the issue here is . . . whether StemCells subjected itself to the jurisdiction of this Court when it filed a prior suit against Neuralstem with respect to related patents, involving the same parties, and arising out of the same transaction or same nucleus of operative facts.  *See Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 25 (1st Cir. 1991) (holding that a defendant that invokes the jurisdiction of a court as a plaintiff waives its personal jurisdiction defense in all actions related to the claim for which it invoked the court's jurisdiction).
> The Court is satisfied that there exists specific jurisdiction over StemCells in Maryland.  StemCells purposefully availed itself of the privileges and benefits of this forum by voluntarily filing the 2006 Maryland action, which involves the same parties and is related to the same transaction or occurrence as the instant matter.  As the Court noted during the telephonic conference with the parties, the two actions appear to be significantly intertwined and the infringement allegations of the patents involved in both cases appear to stem from Neuralstem's use of therapeutic and screening activities relating to neural stem cells.  In fact, Neuralstem maintains that the USPTO found the claims of the '505 Patent and '418 Patent to be "virtually identical" to those asserted in the related Maryland action, rejecting the claims for both "same invention" and "obviousness type"

> double-patenting in view of claims in the
> '832 patent. (Pl. Opp. Br., Exs. E, at 8-
> 11; R, at 2-4.)
>
> Finally, Neuralstem notes that
> StemCells admits that the state law claims
> at issue in this case are based on
> statements made by Neuralstem's CEO
> concerning the reexamination of patents
> involved in the related 2006 Maryland
> action. (See Pl. Opp. Br., Ex. J, ¶¶ 21-
> 37.) StemCells also admitted that these
> state law claims have "common operative
> facts" to its patent infringement claims.
> (Id., ¶ 2.) In light of these facts, and
> upon the Court's examination of the
> relatedness between the two actions, the
> Court concludes that StemCells is subject to
> the jurisdiction of this Court.

*Neuralstem, Inc.*, 573 F.Supp.2d at 898.

While it may not be required that either (1) earlier litigation needs to be "virtually identical" to later litigation, or (2) later litigation needs to be "based on statements made" during the earlier litigation in order for the later to "arise from" an earlier one, the instant case is not a close one. Unlike in *Neuralstem*, the claims and issues in this case are far from "virtually identical" to the previous Circuit Court action. The issues in the Circuit Court action related to Mr. Tompros' right to appoint Mr. Labowitz as his successor trustee, as well as Mr. Tompros' and Mr. Labowitz's entitlement to fees and costs incurred in litigating that single issue. The issue in the instant case is whether Mr. Labowitz was within his rights to not disburse one-third of the principal to Mr.

14

Coroneos on his turning 40.   Under Maryland law, these distinct issues are not "significantly intertwined" to the point where the instant case can rightfully be said to arise from the Circuit Court action.   *See, e.g.*, *Pinner v. Pinner*, --- A.3d ---- , 2020 WL 1025517, at *9-10 (Md. Mar. 3, 2020); *Hogs & Heroes Found. Inc. v. Heroes, Inc.*, 202 F.Supp.3d 490, 495 (D. Md. 2016).

Thus, Plaintiff has not presented facts that satisfy any prong of the Maryland long-arm statute.   Even assuming Plaintiff could satisfy the long-arm statute, the question of whether Defendant's contacts satisfy due process would still remain.   It is, at best, doubtful that Defendant's contacts meet that test. For a court to exercise specific jurisdiction over a defendant, "the defendant's suit-related conduct must create a substantial connection with the forum State."   *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).   The Supreme Court has found relevant two aspects of the constitutionally necessary relationship with the forum State.    "First, the relationship must arise out of contacts that the 'defendant himself' creates with the forum State."   *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).    "Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.*   In other words, "the plaintiff cannot be the only link

between the defendant and the forum." *Id.* Here, Mr. Labowitz's involvement with the state of Maryland is limited to his obligation to substitute himself in the Circuit Court action which, at the time of his substitution, had already resulted in a declaratory judgment affirming Mr. Tompros' right to appoint him as successor trustee. While mediation over what remained of the case occurred in Maryland, it can hardly be said that by participating in that mediation, Mr. Labowitz had "expressly aimed" his conduct at the state of Maryland or that Maryland was the "focal point" of the dispute. *See Walder*, 571 U.S. at 282, 287. *See also*, *Hawkins v. i-TV Digital Tavkozlesi zrt.*, 935 F.3d 211, 230 (4th Cir. 2019). In other words, Mr. Labowitz's connection was to the Coreonos siblings as their trustee, a connection which did not imply any more than a passing connection to Maryland – and certainly not a "substantial" one. *Id.*

Plaintiff also alludes to the actions of the *Circuit Court* – not Mr. Labowitz himself – in exercising jurisdiction over the prior declaratory judgment action, entering a consent order in that action, and ordering that Mr. Labowitz be awarded certain fees and expenses. (ECF No. 16, at 8). This court must examine the possibility that a Maryland court's prior involvement in administration of the trust, coupled with the fact that the Will was probated in Maryland, and that Mr. Labowitz willingly

accepted the trusteeship, could subject him to personal jurisdiction in Maryland courts. Neither party has addressed this potential satisfactorily. Again though, the burden is on the Plaintiff at this stage to make out a prima facie showing of personal jurisdiction. Mr. Coroneos has not done so.

There is a set of circumstances under which Mr. Labowitz's acceptance of the trusteeship would have subjected him to personal jurisdiction. Outside of the Maryland long-arm statute, there is another statutory provision dealing with jurisdiction over trusts and trustees: "By accepting the trusteeship of a trust having the *principal place of administration for the trust in the State or by moving the principal place of administration to the State*, the trustee submits personally to the jurisdiction of the courts of the State regarding a matter involving the trust." Md. Code Ann., Est. & Trusts § 14.5-202 (emphasis added).

The question, then, is whether the "principal place of administration" of the trust is Maryland. The answer appears to be no. The Restatement (Second) of Conflict of Laws centers the inquiry on the testator's intent, *i.e.*, which jurisdiction the testator intended to designate as the "place of administration": "In the case of an individual trustee, it may be inferred that the testator intended that the trust should be administered at the trustee's place of business or domicile." Restatement

(Second) of Conflict of Laws § 267 (1971).  The Restatement
provides this guidance in light of the fact that "[t]he question
frequently arises whether a testator or settlor has manifested
an intention that the trust be administered in a state other
than that of [her] domicile."  *Id*.  It is important, then, to
acknowledge that Ms. Argyropolous was not domiciled in Maryland
when her will was executed.  Her will designates her as
"residing and domiciled in the City of Washington, District of
Columbia[.]" (ECF No. 1-2, at 6).  Thus, even though the will,
which created the trust, was probated in Maryland, there is not
even a first-instance presumption that Ms. Argyropolous ever
intended Maryland to be the place of administration.

The rest of the Will further belies any notion that the
"principal place of administration" was ever intended to be
Maryland.  Ms. Argyropolous originally designated Mr. Tompros as
the trustee.  Her Will acknowledges that he was, at the time of
his appointment, "residing in Westchester, New York[.]" (ECF No.
1-2, at 8).  The Will further states that if for some reason Mr.
Tompros is unwilling or unable to serve as trustee, the trustee
should be "KATHERINE CALOMIRIS TOMPROS, currently of
Westchester, New York[.]" (*Id*.).  These provisions suggest that
Ms. Argyropolous believed that the trust would be administered
from New York and is strong proof of her intent that New York be
(at least the original) "principal place of administration."

18

No other provisions of the will contradict this suggestion. In fact, the only other provision of the Will which even obliquely references the place of administration is Section 7.04.  That section deals with the possible resignation of a trustee, and states that a trustee may not resign "unless and until such ... Trustee has, in accordance with the laws of the jurisdiction or jurisdictions in which this Will is being probated *or in which any trust created hereunder is being administered*, properly attended to the valid appointment of a successor[.]"  (ECF No. 1-2, at 14) (emphasis added).  While this provision contemplates the possibility that the law of the state in which the Will is probated may be controlling, it also contemplates the possibility that the law of another jurisdiction – the one in which the trust is being administered – may be controlling.

Ms. Argyropolous did not designate that the trust be administered in the state in which the Will was probated.  Nor did she designate the law which was to control the trust – which could have provided guidance as to where she intended the trust be administered.  Rather, she designated the likely place of administration given Mr. Tompros' then current residence, New York, and explicitly acknowledged the possibility that the law of other jurisdictions could control Mr. Tompros' ability to resign as trustee.  As already mentioned, Mr. Tompros eventually

moved to Florida, thus moving the place of administration as well, in perfect accordance with Ms. Argyropolous' contemplation of a future place of administration outside of New York.   Mr. Tompros then designated Mr. Labowitz as his successor trustee, and Mr. Labowitz went on to administer the trust from his home in Virginia.   The "place of administration" of the trust has shifted from New York, to Florida, to Virginia, but never to Maryland.   In other words, Mr. Labowitz never "accept[ed] the trusteeship of a trust having the principal place of administration for the trust in [Maryland]" and therefore never "submit[ted] personally to the jurisdiction of the courts of the State regarding a matter involving the trust."   Md. Code Ann., Est. & Trusts § 14.5-202.

Few Maryland courts have interpreted the phrase "principal place of administration."   Those that have suggest that the place of administration of this trust has never been Maryland. In 1993, the Court of Special Appeals of Maryland determined that the place of administration of a disputed trust was Maryland, because:

> The list of contacts with Maryland is substantial. The settlor was domiciled in Maryland. The settlor provided for a substitute Maryland Co-trustee. The trust was funded with the preferred stock of a Maryland corporation. The trust identified a Maryland charity as one of the contingent remaindermen. The settlor named the Safe

> Deposit & Trust Company of Baltimore as a
> successor corporate trustee.

*Lansburgh v. Lansburgh*, 98 Md. App. 1, 5–6, 632 A.2d 221, 223 (1993); *see also Soper v. Maurer*, No. CIV.A. AW-07-1602, 2010 WL 457546, at *2 (D. Md. Feb. 2, 2010) (deciding the "place of administration" solely by reference to the residence of the administrator).  Here, the list of contacts with Maryland is far shorter.  The settlor was not domiciled in Maryland when she executed the will.  The settlor named a New York resident as trustee and another New York resident as a potential substitute trustee.  Plaintiff has not suggested any other reason to believe the trust was intended to be administered in Maryland, save for the fact that the will which created the trust was probated in Maryland.  Courts outside of Maryland also validate this approach to determining the place of administration.  *See*, *Norton v. Bridges*, 712 F.2d 1156 (7th Cir. 1983); *Queen v. Schmidt*, No. CV 10-2017 (PLF), 2015 WL 5175712 (D.D.C. Sept. 3, 2015).[1]

---

[1] The above analysis may also mean that the Circuit Court lacks jurisdiction or that there is no Maryland cause of action applicable to this dispute.  Because the place of administration of the trust has never been Maryland, Plaintiff's claim of "Breach of Trust Pursuant to Md. Code Ann, Est. & Trusts § 14.5-901" does not and cannot apply to a matter arising out of the administration of this particular trust.  In other words, there is no Maryland cause of action at all, personal jurisdiction or no.

2.   **General Jurisdiction**

Without ever saying so explicitly, Plaintiff also appears to argue that this court also has general jurisdiction over Mr. Labowitz.  Although they have no relation to the instant case, Plaintiff raises the facts that "Mr. Labowitz[ is] a member of the Maryland Bar who has been party to at least thirty-six cases in the Maryland courts, including at least five in the past ten years[.]"  (ECF No. 16, at 7-8).  In order for the court to exercise general jurisdiction, Mr. Labowitz's contacts with Maryland must be "so substantial and of such a nature as to justify suit against [him] on causes of action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Mr. Labowitz – Plaintiff concedes – is domiciled in Virginia.  No Maryland court has addressed whether Mr. Labowitz's status as a member of the Maryland bar confers general jurisdiction on this court.  The United States District Court for the District of Columbia has noted, however, that "it has been widely held that membership in a state Bar does not have any impact on the jurisdictional analysis." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F.

22

Supp. 2d 240, 284 (D.D.C. 2011) (collecting cases).   As such, this court lacks general jurisdiction over Mr. Labowitz.

Because the court finds that it lacks personal jurisdiction over Mr. Labowitz, it declines to address Mr. Labowitz's motion in the alternative for dismissal based on *forum non conveniens*. Likewise, Plaintiff's motion for summary judgment will be denied as moot.

## III. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant Kenneth E. Labowitz will be granted and the motion for summary judgment filed by Plaintiff Christopher Coroneos will be denied as moot.   A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
